ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Irma Rodríguez Moisa     State Bar No. 162272
        Imoisa@aalrr.com
Ruth M. Bond        State Bar No. 214582
        Ruth.Bond@aalrr.com
Jennifer K. Berneking     State Bar No. 167172
        Jennifer.Berneking@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone:  (562) 653-3200
Fax:  (562) 653-3333

Attorneys For Defendant
CITY OF SAN BERNARDINO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA N.,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF SAN BERNARDINO, et al.,<br><br>                    Defendants. | Case No.    5:24-cv-01593-KK-AGR<br><br>**DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL**<br><br>Judge:    Hon. Kenly Kiya Kato<br>Date:     July 2, 2026<br>Time:     9:30 a.m.<br>Dept.:    3<br><br>Complaint Filed:   January 3, 2024<br>Trial Date:        December 1, 2025 |

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 1 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION FOR NEW TRIAL

**TABLE OF CONTENTS**

**Page**

I. THE CITY'S MOTION IS PROPER ............................................................. 5

II. THE COURT ERRONEOUSLY FOUND VICARIOUS LIABILITY ......... 6

    A. The Court's Reliance on *Juarez* is Misplaced; There Are No Facts that Show Aguilera Asserted His Authority as an Officer Over Plaintiff ....................................................................................... 6

    B. The Court's Coercive Power Finding is Not Supported by the Evidence ...................................................................................... 10

    C. The Court's Order Does Not Show that It Weighed the Personal Nature of Aguilera's Conduct .................................................... 11

    D. The Court Erred in Finding Vicarious Liability Based on Policy Factors .......................................................................................... 13

III. THE COURT'S FINDING ON THE UNDERLYING CLAIMS IS MANIFEST ERROR ................................................................................ 15

    A. The Court's Sexual Battery Finding is Manifest Error ................ 15

    B. The Court's False Imprisonment Finding is Manifest Error ........ 16

    C. The Court's Bane Act Finding is Manifest Error ........................ 17

    D. The City Challenged the Court's Negligence Finding ................ 18

IV. THE COURT ERRED IN FINDING THE CITY COULD NOT ASSERT THE COMPARATIVE FAULT DEFENSE ................................ 18

V. THE DAMAGES AWARD IS NOT SUPPORTED BY THE EVIDENCE .............................................................................................. 19

VI. CONCLUSION ........................................................................................ 20

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

57341149.2/005119.00021

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Al-Adahi v. Obama*
613 F.3d 1102 (D.C. Cir. 2010) ..................................................................21

*Anderson v. City of Bessemer*
470 U.S. 564 (1985) ......................................................................................5

*Beech Aircraft Corp. v. Rainey*
488 U.S. 153 (1988) ....................................................................................21

*Hernandez v. Montgomery*
2024 U.S. Dist. LEXIS 145077 (C.D. Cal. 2024) .......................................5

*Latif v. Obama*
666 F.3d 746 (D.C. Cir. 2011) .................................................................5,21

*Lentini v. Cal. Ctr. For the Arts*
370 F.3d 837 (2004) ....................................................................................21

**STATE CASES**

*Farmers Ins. Group v. County of Santa Clara*
11 Cal.4th 992 (1995) .................................................................................21

*Juarez v. San Bernardino City Unified School District* (2024)
106 Cal.App.5th 1213 .................................................................................21

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*
12 Cal.4th 291 (1995) .................................................................................21

*Marez v. Lyft, Inc.*
48 Cal.App.5th 569 (2020) .........................................................................21

*Mary M. v. City of Los Angeles*
54 Cal.3d 202 (1991) ..................................................................................21

*Musgrove v. Silver*
82 Cal.App.5th 694 (2022) .........................................................................21

*Parker v. Dequito*
2022 WL 16951842 (S.D. Nov. 15, 2022) ...................................................5

*People v. King,*
183 Cal.App.4th 1281 (2010) .....................................................................21

**STATE CODES/STATUTES**

Bane Act .......................................................................................................21

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

57341149.2/005119.00021

**TABLE OF AUTHORITIES
(CONTINUED)**

**Page**

**OTHER AUTHORITIES**

Fed. R. Evid. 106 ................................................................................................21

Fed. R. Evid. 401 ................................................................................................21

Fed. R. Evid. 402 ................................................................................................21

U.S. Const. Amend IV .........................................................................................21

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

TABLE OF AUTHORITIES

57341149.2/005119.00021

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. THE CITY'S MOTION IS PROPER

As Plaintiff concedes, a manifest error of law or fact are grounds for a new trial, and that "manifest error" is defined as "'plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" Dkt. 136, p. 10, quoting *Hernandez v. Montgomery*, 2024 U.S. Dist. LEXIS 145077 at \*5 (C.D. Cal. 2024). "In other words, a court looks for clear error in a reconsideration analysis." *Id.*, citing *Parker v. Dequito,* 2022 WL 16951842, \*2 (S.D. Nov. 15, 2022) (listing cases where courts applied the clear error standard in the manifest error analysis). A finding is clearly erroneous if "**on the entire evidence**" the court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (emphasis added; internal citations omitted).

In *Latif v. Obama,* 666 F.3d 746, 763 (D.C. Cir. 2011), the Court emphasized the importance of reviewing the entire record and noted that a "district court's failure to address certain relevant evidence leaves [the court] with no confidence in its conclusions about the evidence it did consider." *Id.* at 763. Circuit Judge Henderson, concurring, further noted that while "the district court has wide latitude to resolve factual disputes[,]" it is "only within certain bounds[,]" which is that the "finding is permissible' or 'plausible in light of **the record viewed in its entirety**.'" *Id.* at 765 (Henderson, J., concurring) (quoting *Anderson,* 470 U.S. at 574) (emphasis added). Judge Henderson further explained that there is no clear error if "the district court's permissible inferences were based on the record in its entirety – not on the view that one side's evidence, standing in isolation, is plausible." *Id.* Thus, a district court errs when its findings are based not on the entire record, but rather on isolated, one-sided evidence. That is precisely the issue here.

Contrary to Plaintiff's contention, the City is not asking the Court to merely reweigh selected evidence on which its order rests. Rather, the City is asking the Court

- 5 -

57341149.2/005119.00021

to consider the record in its entirety – both the evidence the Court selected and the conflicting evidence in the full record, including evidence relevant to Plaintiff's credibility and to whether Aguilera asserted police authority over Plaintiff at the time of the alleged tortious acts. The Court's order does not show that it considered such relevant conflicting evidence. Although the Court stated that it found Plaintiff's testimony about her interactions with Aguilera "reasonable and credible," it did not address portions of Plaintiff's testimony that undermined her own claims. Likewise, although the Court stated it found the testimony of the City's expert, Dr. Gregory Sayer, "unreasonable, unreliable, and incredible," it cited no evidence in the record to support its finding. This is the "unduly atomized approach" the *Latif* court found improper and leaves an appellate court with "no confidence" in a district court's "conclusions about the evidence it did consider." *Latif,* 666 F.3d at 759, 763.

Thus, the City asks the Court to correct a manifest error in fact and law: imposing vicarious liability without considering the evidence in its entirety and indeed, without evidence that Aguilera used or misused police authority during the alleged tortious conduct. Without that evidence, Aguilera's conduct cannot, as a matter of law, be found to be an outgrowth of, or otherwise connected to, his employment. The City's Motion is proper.

## II.    THE COURT ERRONEOUSLY FOUND VICARIOUS LIABILITY

### A.    The Court's Reliance on *Juarez* is Misplaced; There Are No Facts that Show Aguilera Asserted His Authority as an Officer Over Plaintiff

Plaintiff concedes that the Court's vicarious liability finding rested on five facts:

- Aguilera obtained Plaintiff's personal information during the service call;

- Aguilera's phone and text communications with Plaintiff occurred while he was on duty;

- Plaintiff testified she felt forced to comply with Aguilera's sexual demands

- 6 -

57341149.2/005119.00021

on September 2, 2022 and October 19, 2022 due to his position as an officer;

- During each incident, Aguilera either had a visible firearm, flashed his badge, or self-identified himself as an officer.

- Aguilera initially discussed the investigation with Plaintiff while they were in his vehicle.

Dkt. 136, p. 12; Dkt. 117, p. 17.

None of these facts show that Aguilera used or misused police authority **during the alleged tortious acts**. Obtaining Plaintiff's personal information during the August 25, 2022 service call did not make his later conduct—eight days later on September 2 and then another six weeks later on October 19—an outgrowth of his employment. *Lisa M. v. Henry Mayo Newhall Memorial Hospital,* 12 Cal.4th 291, 298 (1995) (the nexus required for respondeat superior liability is to be distinguished from mere but for causation: the fact that employment brought the tortfeasor and victim together in time and place is insufficient). Nor did Aguilera's on-duty calls and texts make his off-duty conduct work-related. *Id.* And Plaintiff's testimony that she felt compelled to comply because Aguilera was an officer did not establish his conduct was within the scope of employment; Plaintiff concedes the inquiry turns on the employee's conduct, not the plaintiff's subjective reaction. Dkt. 136, p. 14; see *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 219 (1991) (the court's analysis focused on the objective authority vested in the officer and not the victim's subjective fear of him).

The firearm evidence likewise does not support vicarious liability. Although Plaintiff testified that she saw the "butt" of a gun in Aguilera's truck on September 2, there is no evidence that Aguilera referred to, touched, displayed, pointed, or otherwise used the gun to keep Plaintiff in the truck or to obtain oral sex. (Tr. 318:1-3.)

Nor does the badge evidence suffice. Even accepting Plaintiff's disputed testimony that Aguilera flashed his badge at the apartment manager and said he was

- 7 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL

57341149.2/005119.00021

there for "official business," there is no evidence that Aguilera used his badge or asserted police authority over Plaintiff to falsely imprison her or obtain oral sex.

Finally, Plaintiff's testimony that Aguilera initially discussed the investigation with her while in his truck is not dispositive of the issue whether he was acting within the scope of employment when he committed the tortious acts. Aguilera had informed Plaintiff prior to her getting into his truck that he was off work. (Tr. 183:25-184:4; 380:9-22; 382:13-25.) He showed up in his personal vehicle and in plain clothes. (Tr. 143:2-22; 198:5-6; 382:13-383:7.) Aguilera also told Plaintiff he wanted to see her; he did not state that he was investigating the August 25, 2022 incident. (Tr. 186:17-187:15.)

Under the "risk-focused test" the Court applied in finding vicarious liability, "an employee's allegedly tortious conduct is deemed to be within the scope of employment only if that conduct is required by, engendered by, or an '"outgrowth"' of his employment." *Musgrove v. Silver,* 82 Cal.App.5th 694, 708 (2022), citing *Lisa M., supra,* 12 Cal.4th 291, 298, 300 (1995); *Farmers Ins. Group v. County of Santa Clara,* 11 Cal.4th 992, 1005 (1995). "Put differently, there must be 'a nexus between the employee's tort and the employment.'" *Id.*, quoting *Marez v. Lyft, Inc.,* 48 Cal.App.5th 569, 582 (2020).

In *Musgrove,* a personal chef employed by the defendant film producer met the producer's executive assistant off duty for a late-night social gathering during which the chef supplied alcohol and cocaine. The executive assistant later drowned. The Court held that the chef's conduct was not within the scope of his employment.

The *Musgrove* court reasoned "the fact that Herold [the chef] met Musgrove [the executive assistant] on prior trips where they were brought together because Herold happened to be Silver's personal chef and Musgrove happened to be Silver's executive assistant does not mean that Herold's conduct in the course of their personal relationship is an outgrowth of Herold's employment as a chef." *Musgrove,* 82 Cal.App.5th at 713.

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION FOR NEW TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

57341149.2/005119.00021

The Court also rejected Plaintiff's argument that Herold had emailed Musgrove while he was working earlier in the day, prior to meeting up with Musgrove, and therefore, all of Herold's conduct later that night was necessarily an "outgrowth" of his initial email. The Court noted that "[t]his argument rests on a misreading of the test." *Id.* at 713. "The pertinent question is whether the employee's negligent conduct (and its attendant risk) was an outgrowth of his job, not whether a plaintiff can identify something the employee did while at work that may have set the stage for his subsequent negligent conduct. Herold's flirtation with Musgrove had nothing to do with his job duties as Silver's personal family chef." *Id.* at 713.

The same reasoning applies here. That Aguilera met Plaintiff during a service call and later communicated with her while on duty does not make his alleged tortious conduct on September 2 and October 19 an "outgrowth" of his initial response to the service call or his later on-duty communications with her. Aguilera's communications and sexual relationship with Plaintiff had nothing to do with his duties as a police officer.

Plaintiff argues that the Court correctly relied on *Juarez v. San Bernardino City Unified School District* (2024) 106 Cal.App.5th 1213, in finding that Aguilera's "off-duty misconduct … may fairly be regarded as an outgrowth of his employment." However, *Juarez* is not only procedurally distinguishable but factually distinguishable as well. There, the alleged facts were that the officer was investigating his stolen cellphone. While carrying his firearm and with his police badge clipped to his belt, the officer identified himself as a police officer to the plaintiffs, displayed his badge and demanded that the plaintiffs comply with his commands. The officer then pulled his firearm, cocked it and aimed the firearm at the plaintiffs.

Here, by contrast, no facts show that Aguilera was investigating the August 25, 2022 incident at the time of the alleged tortious acts. Plaintiff's assertion that she *thought* Aguilera was investigating the incident with her boyfriend, and that they briefly discussed the investigation, is irrelevant to the scope-of-employment inquiry.

- 9 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Nor is there evidence that, at the time of the alleged tortious acts, Aguilera displayed his badge to Plaintiff, pointed a firearm at her, or demanded that she enter his truck and give him oral sex. Unlike in *Juarez*, no facts show that Aguilera asserted police authority over Plaintiff at the time of the alleged tortious acts. The Court's reliance on *Juarez* is therefore misplaced and erroneous.

## B. The Court's Coercive Power Finding is Not Supported by the Evidence

Plaintiff's Opposition confirms the manifest error of law and fact in the Court's order by taking the same approach: listing selected evidence—"the firearm, the badge, the 'official business' announcement, the feigned discussion of the investigation, and the on-duty communications"—and arguing that each is what "*Mary M. and Juarez* identify as a hallmark of an officer's coercive authority over a member of the public." Dkt. 136, p. 14. What Plaintiff and the Court fail to address, however, is that, unlike in *Mary M. and Juarez*, there is no evidence that Aguilera pointed a gun at Plaintiff, displayed his badge to her, threatened her, told her he wanted to see her for "official business," or claimed he needed to discuss an investigation. As for the on-duty communications, there is no allegation that Aguilera committed any tortious conduct by texting or calling Plaintiff.

Plaintiff also argues that the "City's effort to distinguish *Mary M.* fares no better," but she does not dispute that the facts of *Mary M.* differ from the facts here. Instead, Plaintiff argues only that "*Mary M.* imposes no requirement that a victim scream, flee, or resist; … [that] duress is assessed objectively; a victim need not announce her fear to her assailant." Dkt. 136, p. 14.

The objective evidence in this case shows that Aguilera did not assert his police authority or power over Plaintiff. Aguilera did not threaten Plaintiff to give him her location, to get into his vehicle, or give him oral sex. Aguilera did not detain or restrain Plaintiff to obtain oral sex. Aguilera did not force Plaintiff to orally copulate him. Thus, the evidence does not support the Court's finding that Aguilera used coercive

- 10 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL

57341149.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

power against Plaintiff.

Moreover, contrary to Plaintiff's contention, the City is not victim-blaming by stating Plaintiff's conduct was "calculated" because she met Aguilera, "collected evidence," and reported him. The City's contention is based on the evidence which Plaintiff did not dispute.

### C. The Court's Order Does Not Show that It Weighed the Personal Nature of Aguilera's Conduct

Plaintiff's Opposition relies on the same selected, piecemeal evidence to argue that the Court weighed the personal nature of Aguilera's conduct and permissibly found that he acted within the scope of employment: Aguilera obtained Plaintiff's information because she gave it to him when he responded to the 911 service call; Aguilera participated in the investigation; and Aguilera "displayed his duty weapon and badge and announced 'official business.'" Dkt. 136, pp. 16-17. But Plaintiff's reliance on that same limited evidence confirms that the Court did **not** weigh the personal nature of Aguilera's conduct because it failed to address other relevant evidence.

The Court's order does not address evidence that Plaintiff also reached out to Aguilera and, indeed, initiated contact with him after she got a new phone and her boyfriend was back in jail. (D-Ex. 1, p. 5; Tr. 424:23-425:24; D-Ex. 25A.) Nor does the order address that Plaintiff asked Aguilera to let her know when he got home; that Plaintiff knew where Aguilera lived because he asked her to come to his house; or that, after her interview with PSB officers, Plaintiff contacted Aguilera and told him where to meet her. (D-Ex. 25A, excerpt 4; D-Ex. 1, p. 1; D-Ex. 25A, excerpt 5, @minute 2:15; Tr. 439:7-440:12.) The order also does not address that, on September 2, 2022, before any sexual conduct occurred, Plaintiff stepped out of Aguilera's truck—leaving her cell phone behind—to put her dog back in the house where she was staying. (Tr. 194:8-195:2.) The Court therefore "clearly erred in its treatment of the evidence and in its view of the law." See *Al-Adahi v. Obama*, 613 F.3d 1102, 1111

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 11 -

57341149.2/005119.00021

(D.C. Cir. 2010) (finding the district court clearly erred when it treated "items of evidence in isolation" and failed to address evidence related to the detainee's credibility despite an "extensive record and numerous factual disputes").

Plaintiff's argument that *Farmers* is distinguishable because it involved a coworker, rather than a member of the public, does not negate its holding that "an employer will not be held vicariously liable for an employee's tortious conduct if the employer substantially deviates from the employment duties for personal purposes." *Farmers,* 11 Cal.4th at 1005. Vicarious liability is inappropriate where the sexual acts "had been undertaken solely for the employees' personal gratification and had no purpose connected to the employment. Moreover, the acts had not been engendered by events or conditions relating to any employment duties or tasks; nor had they been necessary to the employees' comfort, convenience, health, or welfare while at work." *Id.* at 1007.

Although Farmers recognized the sexual misconduct in *Mary M.* as an exception—i.e., "sexual misconduct by **on-duty** police officers against members of the public"—Aguilera was off duty here. The evidence shows that Aguilera repeatedly told Plaintiff he wanted to see her after he got off work. (D-Ex. 1, pp. 5, 6; D-Ex. 25, excerpt 5.) Significantly, Aguilera's conduct in meeting Plaintiff on September 2 and October 19, 2022, "had not been engendered by events or conditions relating to any employment duties or tasks." The District Attorney's Office had notified Aguilera that it would not file charges against Plaintiff's boyfriend, so there was no need to further investigate the August 25, 2022 incident. (D-Ex. 25.) Although Plaintiff claims she believed Aguilera was investigating the incident, her subjective belief is irrelevant to whether Aguilera acted within the scope of employment. There is no evidence that Aguilera told Plaintiff he wanted to see her to conduct any further investigation. (D-Ex. 1.) To the contrary, Plaintiff testified that Aguilera merely stated he wanted to see her when he got off work. (See D-Exh. 1, pp. 1, 5.) The evidence further shows that Aguilera's conduct was not necessary to his "comfort, convenience,

- 12 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION FOR NEW TRIAL

57341149.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

health, or welfare while at work." *Farmers,* 11 Cal.4th at 1007. Again, the undisputed evidence shows that Aguilera met with Plaintiff **after work**, unrelated to any duties or tasks connected to his employment as a police officer.

### D.    The Court Erred in Finding Vicarious Liability Based on Policy Factors

In *Musgrove, supra,* the appellate court noted that as a matter of policy, holding an employer liable for an employee's conduct "would undoubtedly make strides toward 'prevent[ing]the recurrence of [similar] tortious conduct' and 'giv[ing] greater assurance of compensation [to] the victim' [citations]," however "these two factors will *always* counsel in favor of imposing liability because they will be furthered *whenever* a defendant is held vicariously liable for a plaintiff's injury." *Musgrove,* 82 Cal.App.5th at 715 (emphasis in original; citations omitted). The court further noted that "[w]hether 'it is equitable to shift losses to the employer' turns on whether 'the employer benefit[ted] from the injury-producing activity and [whether] such losses are, as a practical matter, sure to occur from the conduct of the enterprise.' [Citation.] Where the employee's 'injury-producing activity' is 'simply too attenuated' from his duties for the 'enterprise,' there is no vicarious liability as a matter of law. [Citation.]" *Id.* The *Musgrove* court found that it was inequitable to shift the burden of loss onto the employer because it did not benefit from its employee's (chef's) "'injury-producing activity' of supplying Musgrove with more alcohol and with cocaine late at night before she was likely to go swimming, and because this is not, 'as a practical matter, sure to occur from' Herold's employment as Silver's personal family chef. In sum, Herold's malfeasance and nonfeasance is 'simply too attenuated' from his job duties as a chef to make it equitable to tag Silver with liability arising out of Herold's tortious conduct." *Id.* at 715.

Here, Plaintiff argues that the "Court found all three respondeat superior policies – deterrence, victim compensation, and equitable loss-spreading – favored liability." Dkt. 136, p. 17. However, the Court did not address each of those policy

- 13 -

57341149.2/005119.00021

factors. Dkt. 117, p. 17. Instead, it merely quoted language from *Mary M.* explaining why imposing vicarious liability may be appropriate.

Moreover, although Plaintiff argues that the Court's "policy-factor findings rest on credibility determinations that are entitled to deference," the order does not reflect the Court considered the City's evidence, much less properly weigh the credibility of the City's witnesses. Rather, without addressing those portions of Plaintiff's testimony that undermined her claims, the Court concluded the City's witnesses were not credible because it opined that the interaction between Aguilera and Plaintiff was lawful and consensual. Based on that finding, and on disputed evidence that Plaintiff attempted to report Aguilera's conduct on two prior occasions but was ignored by a sergeant, the Court found that the cost resulting from the misuse of police power should be borne by the community. Dkt. 117, p. 17. The Court's view and application of the law, based on isolated evidence, is clear error.

Significantly, the Court admonished the City's counsel from arguing that the City promptly investigated Plaintiff's written complaint and followed procedures the City had in place which resulted in Aguilera being decertified as a police officer. The Court's consideration of evidence it admonished the City from disputing is clear error.

The Court also clearly erred by relying on Aguilera's out-of-context "admission," which Plaintiff repeatedly cites to support both the conclusion that Aguilera acted within the scope of employment and the Court's credibility assessment of the City's witnesses. That argument is misleading because the full context of Aguilera's statement shows that he did not admit his actions were "unwelcomed." Plaintiff's own record citation shows that Aguilera admitted only that he was a police officer. The Court's piecemeal reliance on one portion of Aguilera's "admission," taken out of context, is clear error. See Fed. R. Evid. 106 (rule of completeness); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172-173 (1988) ("when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for

- 14 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402"). Aguilera's full statement to Investigators, in which he denied that he violated the "unwelcome solicitation" portion of the policy can be found at Aguilera Interview Part 2, pp. 6:12-7:25 (lodged with Court; attached to Declaration of Ruth M. Bond in Support of Replies to Opposition to Motion for New Trial and Motion to Amend, for the Court's convenience). The Court erred in not considering Aguilera's full statement.

## III.    THE COURT'S FINDING ON THE UNDERLYING CLAIMS IS MANIFEST ERROR

### A.    The Court's Sexual Battery Finding is Manifest Error

Plaintiff and the Court rely on *People v. King*, 183 Cal.App.4th 1281 (2010), to support the finding that Aguilera's "position of authority" created an "implied threat of hardship or retribution if [Plaintiff] refused to cooperate." Dkt. 117, p. 11; Dkt. 136, p. 20. The Court then concluded that "the evidence supports the finding Plaintiff 'complied because she was afraid and felt she had no choice.'" *Id.* That conclusion was a manifest error of law and fact.

Again, the Court relied on isolated evidence rather than the record as a whole. That erroneous treatment of the evidence led to legal error and an erroneous application of the law. In *King*, the court defined duress as "a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which [she] would not otherwise have performed, or acquiesce in an act to which [she] otherwise would not have submitted." *King*, 183 Cal.App.4th at 1320. The *King* court further explained that "'[t]he total circumstances, including the age of the alleged victim, and his or her relationship to the … [defendant], are factors to consider in appraising the existence of the duress.'" *Id.* (internal citations omitted).

As detailed above, the Court did not consider the "total circumstances" here. It did not address Plaintiff's own testimony that undermined her claim that she feared

- 15 -

57341149.2/005119.00021

Aguilera because he was a police officer and complied because she feared what he could do to her. The Court's failure to consider the evidence in its entirety was clearly erroneous.

The evidence does not show that Aguilera threatened Plaintiff, either directly or impliedly, with violence, danger, hardship, or retribution. Indeed, Plaintiff testified that Aguilera did not threaten her or use force against her. (TR. 439:4-6.)

The Court's factual finding that, on September 2, 2022, Aguilera approached Plaintiff under the pretense of discussing her boyfriend's ongoing investigation one day after the reported incident is also clearly erroneous. The incident involving Plaintiff's boyfriend occurred on August 25, 2022—eight days before September 2. Moreover, the evidence does not show that Aguilera approached Plaintiff on September 2 under the pretense of discussing her boyfriend's ongoing investigation. The evidence does not support the Court's finding of sexual battery and thus, the Court's finding is manifest error.

**B.    The Court's False Imprisonment Finding is Manifest Error**

Contrary to Plaintiff's contention, the evidence does not support the Court's finding that Aguilera acted with deceit or placed Plaintiff under duress by telling her he wanted "to come by and see her." Nor does the evidence support the finding that Aguilera "deceitfully implied" an investigative purpose, or that by taking Plaintiff's phone and "exploiting his authority," Aguilera placed Plaintiff "under duress." Dkt. 136, p. 21. Plaintiff's reliance on the same isolated evidence the Court cited—and Plaintiff's repeated omission of relevant contradictory evidence—only confirms the City's position that the Court's finding is clearly erroneous.

There is no evidence that Aguilera told Plaintiff he wanted to meet her for any police-related purpose. Rather, the evidence shows Aguilera clearly communicated he wanted to see Plaintiff **after work**. Plaintiff testified that even when she attempted to discuss police-related business with Aguilera, he refused to discuss it. (D-Ex. 1, p. 2; Tr. 419:22-420:7; 224:19-25, 420:5-422:1.)

- 16 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL

57341149.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Moreover, even if the Court accepts Plaintiff's testimony that Aguilera may have flashed his badge at the property manager and told the property manager he was there for official business, there is no evidence that Aguilera displayed his badge to Plaintiff or asserted any police authority over her at the time of the alleged tortious acts. The evidence does not support the Court's finding of false imprisonment. The Court's finding is manifest error.

### C.    The Court's Bane Act Finding is Manifest Error

Although Plaintiff argues that the "record amply supports the finding" that "Aguilera's conduct was aimed at restraining Plaintiff, and Plaintiff submitted to it," Plaintiff again cites only the same selected evidence. As the City argued above, that evidence was not only taken out of context, but also improperly and erroneously considered in isolation. *Latif,* 666 F.3d at 759, 763.

Plaintiff also argues that Aguilera was not acting as a "private citizen" when he took Plaintiff's cell phone and deleted data because the Court found that Aguilera "indisputably possessed state authority and abused such authority." Dkt. 136, p. 23. However, as the City argued above, there is no evidence that Aguilera asserted police authority over Plaintiff during any encounter after August 25, 2022. Accordingly, contrary to Plaintiff's contention, there was no unlawful Fourth Amendment seizure of Plaintiff. There is no evidence that Aguilera restrained Plaintiff through a show of authority. As the City argued above, the evidence also does not support the Court's finding of duress.

Finally, Plaintiff claims that the City "does not argue or challenge the Court's findings on 'sexual misconduct' by a police officer and its implication of the Fourteenth Amendment[,]" and therefore "the City cannot obtain a new trial on the Bane Act claim." Dkt. 136, p. 25. That is incorrect. The City challenged the Court's finding of sexual battery and has repeatedly disputed Plaintiff's claim that Aguilera asserted police authority over her to obtain oral sex. Moreover, the Court relied on the same isolated evidence to support its finding that Aguilera violated Plaintiff's right to

- 17 -

57341149.2/005119.00021

bodily integrity: Aguilera met Plaintiff during a service call; he used information Plaintiff provided during that service call to continue interacting with her; he was on duty when he communicated with her; on September 2, 2022, he discussed the investigation and had a visible firearm; and on October 19, he had visible "insignia of office," including his badge, and announced he was on "official business." Dkt. 117, p. 15.

The City already explained why the Court's treatment of that selected evidence is clearly erroneous. To address Plaintiff's repeated arguments, however, it bears repeating: the Court "clearly erred in its treatment of the evidence and in its view of the law." *Al-Adahi*, 613 F.3d at 1111. As addressed above, the Court reached its conclusion through a series of legal errors. The City's Motion should be granted.

### D.   The City Challenged the Court's Negligence Finding

Plaintiff argues that the City does not challenge the Court's negligence finding because the word "negligence" does not appear in the Motion. However, the City argued that the Court's finding of the individual tortious claims are erroneous and challenged the Court's finding of misconduct by Aguilera that caused Plaintiff's alleged injury. The Court's negligence finding is not supported by the evidence and is manifest error. The City's Motion should be granted.

## IV.   THE COURT ERRED IN FINDING THE CITY COULD NOT ASSERT THE COMPARATIVE FAULT DEFENSE

Plaintiff concedes that the Court may excuse a late-raised defense but argues that it need not do so here. What Plaintiff's argument does not identify, however, is any prejudice she suffered from the City's delayed assertion of the defense. The Court likewise identified no such prejudice. That is because Plaintiff suffered none.

Although Plaintiff argues that the City failed to assert the defense in its Memorandum of Contentions of Fact and Law, the City raised the defense in both the Joint Pre-Trial Statement and its Trial Brief. Dkt. 82-1, p. 4; Dkt. 96, p. 10.

Moreover, the Court's order shows that the Court did not consider the evidence

- 18 -

57341149.2/005119.00021

in its entirety. It ignored Plaintiff's own testimony that undermined her claims and credibility. Thus, contrary to Plaintiff's contention, the Court's finding that the City failed to meet its burden of establishing that Plaintiff or her boyfriend were comparatively at fault was not a merits finding supported by the full record. The Court's conclusion is not a permissible view of the evidence. *Latif,* 666 F.3d at 759. The City is not asking the Court to reweigh selected evidence; it asks the Court to consider the evidence in its entirety. That evidence shows that Plaintiff and her boyfriend were comparatively at fault for her alleged damages. The City does not say this to "victim-blame" Plaintiff. Rather, the evidence shows that, on both September 2 and October 19, 2022, Plaintiff told Aguilera where to meet her, freely entered and exited Aguilera's vehicle, took Aguilera to her friend's house, and gave Aguilera oral sex. (Tr. 103:11-14; 226:23-227:15.) The evidence also shows that Plaintiff told Aguilera he had to be a certain age to "ride this ride" and that she was free to do what she wanted when her boyfriend went back to jail. (Tr. 384:1-389:23; D-Ex. 1, p. 5; Tr. 424:23-425:24; see also D-Ex. 25A, @ minute 6:00.) Again, there is no evidence that Aguilera used physical force or threats to obtain oral sex, or that he used threats to obtain Plaintiff's location. Plaintiff's contention that the Court found on the merits that the City failed to meet its burden on comparative fault is not supported by the evidence.

## V.    THE DAMAGES AWARD IS NOT SUPPORTED BY THE EVIDENCE

According to Plaintiff, "[a] court may set aside a non-jury damages award ***only if*** it is not plausible when viewing the record in its entirety, is unsupported by the evidence, or shocks the conscience." Dkt. 136, p. 27 (citing *Lentini v. Cal. Ctr. For the Arts,* 370 F.3d 837, 850 (2004)). Plaintiff then claims that "the award here is none of those things." The award here is all of those things.

As discussed in detail above, the Court did not consider the evidence in its entirety. The Court ignored evidence that contradicted Plaintiff's claims even though Plaintiff herself provided the testimony that undermined her claims and credibility.

- 19 -

57341149.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

For example, the Court did not consider evidence that contradicted Plaintiff's claim that it was Aguilera who caused her to be afraid to live alone and fear law enforcement.

Plaintiff's contention that Dr. Nolan's opinion that Plaintiff suffers from permanent PTSD directly caused by Aguilera's assault is unrebutted is also an erroneous view of the evidence. Dr. Sayer rebutted Dr. Nolan's opinion and while the Court concluded Dr. Sayer was "unreasonable, unreliable, and incredible," it did not point to evidence to show how the Court reached that conclusion. The order does not show the Court evaluated Dr. Sayer's testimony against the entirety of the record. The damages award is not supported by the evidence and shocks the conscience.

## VI.   CONCLUSION

For all of the foregoing reasons, the City requests that the Court grant its Motion and reconsider its findings.

Dated: June 18, 2026          ATKINSON, ANDELSON, LOYA, RUUD & ROMO


By: */s/ RUTH M. BOND*
    IRMA RODRIGUEZ MOISA
    RUTH M. BOND
    JENNIFER K. BERNEKING
    Attorneys for Defendant
    CITY OF SAN BERNARDINO

DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL

57341149.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## CERTIFICATE OF WORD COUNT

Counsel of Record hereby certifies that pursuant to Local Rule 11-6.2 (Certificate of Compliance) of the Local Rules – Central District of California, the text of this brief consists of 5,238 words out of 7,000 words, "including headings, footnotes and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits" as counted by Microsoft Word word-processing program used to generate this brief.

Dated: June 18, 2026        ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: */s/ RUTH M. BOND*
    IRMA RODRIGUEZ MOISA
    RUTH M. BOND
    JENNIFER K. BERNEKING
    Attorneys for Defendant
    CITY OF SAN BERNARDINO

- 21 -

57341149.2/005119.00021

**CERTIFICATE OF SERVICE**

Case Name: *Christina N. v. San Bernardino et al*

No.:   5:24-cv-01593-KK-AGR

On June 18, 2026, I filed the following document(s) described as **DEFENDANT CITY OF SAN BERNARDINO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL** electronically through the CM/ECF system.  All parties on the Notice of Electronic Filing to receive electronic notice have been served through the CM/ECF system.

Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document to be sent to the persons at the e-mail addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Robert R. Clayton<br>Christina R. Kerner<br>Kym Kanenaka<br>Brock & Gonzales, LLP<br>6701 Center Drive West, Suite 610<br>Los Angeles, CA  90045<br>Brock & Gonzales, LLP<br>6701 Center Drive West, Suite 610<br>Los Angeles, CA  90045 | **VIA CM/ECF and EMAIL**<br><br>**Attorneys for Plaintiff CHRISTINA N.**<br><br>Tel.:  (310) 294-9595<br>Fax:  (310) 961-3673<br><br>Robert R. Clayton, Esq. (rc@brockgonzales.com)<br>Christina R. Kerner, Esq. (ck@brockgonzales.com)<br>Kym Kanenaka (kk@brockgonzales.com)<br>Rose Faulk (rf@brockgonzales.com) (paralegal) |
| Louanne Masry Weeks<br>**Masry Law Firm APC**<br>2629 Towngate Road Suite 205<br>Westlake Village, CA 91361 | **Via EMAIL**<br>**Attorneys for Plaintiff CHRISTINA N.**<br><br>Tel.:  (805) 719-3550<br>Fax:  (805) 919-5259<br><br>Email: masry@masrylaw.com |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 18, 2026, at Pasadena, California.

*/s/ Ashlie Kennedy*
Ashlie Kennedy

57341149.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333