ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Irma Rodríguez Moisa    State Bar No. 162272
    Imoisa@aalrr.com
Ruth M. Bond    State Bar No. 214582
    Ruth.Bond@aalrr.com
Jennifer K. Berneking    State Bar No. 167172
    Jennifer.Berneking@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone:  (562) 653-3200
Fax:  (562) 653-3333

Attorneys For Defendant
CITY OF SAN BERNARDINO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA N.,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN BERNARDINO, et al.,<br><br>    Defendants. | Case No.    5:24-cv-01593-KK-AGR<br><br>**DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Judge:    Hon. Kenly Kiya Kato<br>Dept.:    3<br><br>Complaint Filed:  January 3, 2024<br>Trial Date:    December 1, 2025 |

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION
TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

**TABLE OF CONTENTS**

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 5 |
| II. | ARGUMENT | 5 |
| | A. The Court's Factual Findings Regarding Vicarious Liability Were Clearly Erroneous | 5 |
| | B. The Court Made Manifest Errors of Fact By Omitting Facts and Failing To Consider the Totality of the Evidence | 8 |
| | C. The Trial Court's Credibility Determinations Were Erroneous | 9 |
| |    1. The Court's finding that Plaintiff was credible was erroneous | 9 |
| |    2. The Court's concern about the credibility of City witnesses was erroneous | 10 |
| |    3. The Court's findings that Dr. Nolan was credible and Dr. Sayer was not were erroneous. | 12 |
| | D. The City Does Not Seek To "Relitigate" The Case, Rather The Evidence Did Not Support The Inferences Drawn By The Court | 14 |
| | E. The Court's Conclusions of Law Were Erroneous | 18 |
| |    1. The Court's findings that Aguilera's conduct was an outgrowth of employment was clearly erroneous given controlling case law | 18 |
| |    2. Mary M. is not applicable here. | 19 |
| |    3. The policy rationales do not dictate vicariously liability here | 20 |
| | F. The Court's Findings On The Underlying Claims Are Manifest Error | 22 |
| III. | CONCLUSION | 23 |

57341921.2/005119.00021

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Al-Adahi v. Obama*
613 F.3d 1102 (D.C. Cir. 2010) ...................................................................5,25

*Anderson v. City of Bessemer*
470 U.S. 564 (1985) ........................................................................................25

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153(1988) .........................................................................................25

*Carson Harbor Village, Ltd. v. Unocal Corp.* (9th Cir. 2001)
270 F3d 863 (en banc) ....................................................................................25

*Easley v. Cromartie*
532 U.S. 234 (2001) ........................................................................................25

*Grunewald v. United States*
353 U.S. 391 (1957) ........................................................................................25

*Hernandez v. Montgomery* (C.D. Cal. 2024)
2024 U.S. Dist. LEXIS 145077 ......................................................................25

*Kalouma v. Gonzales*
512 F.3d 1073 (9th Cir. 2008) ........................................................................25

*Latif v. Obama*
666 F.3d 746 (D.C. Cir. 2011) ........................................................................25

*United States v. Gilbert*
57 F.3d 709 (9th Cir. 1995) ............................................................................25

*United States v. Hale*
422 U.S. 171, 95 S.Ct. 2133 (1975) ...............................................................25

*United States v. Hinkson*
585 F.3d 1247 (9th Cir. 2009) ........................................................................25

*United States v. U.S. Gypsum Co.*
333 U.S. 364 (1948) ........................................................................................25

**STATE CASES**

*Farmers Ins. Group v. County of Santa Clara*
11 Cal.4th 992 (1995) .....................................................................................25

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*
12 Cal. 4th. 291 (1995).........................................................................6, 19, 25

*M.P. v. City of Sacramento*
177 Cal.App.4th 121 (2009)............................................................................25

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

*Marez v. Lyft, Inc.*
48 Cal.App.5th 569 (2020) ................................................................ 25

*Mary M. and Juarez v. San Bernardino City Unified School District*
(2024)
106 Cal.App.5th 1213 ...................................................................... 25

*Mary M. v. City of Los Angeles*
54 Cal. 3d 202 (1991) ................................................... 7, 19, 20, 25

*Musgrove v. Silver*
82 Cal.App.5th 694 (2022) .............................................................. 25

*Z.V. v. Cnty. of Riverside*
238 Cal.App.4th 889 (2015) ............................................................ 25

**STATE CODES/STATUTES**

Bane Act ........................................................................................... 25

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ............................................ 25

Fed. R. Evid. 106 ............................................................................. 25

Fed. R. Evid. 401 ............................................................................. 25

Fed. R. Evid. 402 ............................................................................. 25

U.S. CONST. amend. IV .................................................................... 25

57341921.2/005119.00021

I.   **INTRODUCTION**

Contrary to Plaintiff's main argument in Opposition to the City's Rule 52(b) motion, the City is not merely asking the Court to relitigate the case that was already tried. Rather, the City argues that the Court's factual findings and legal conclusions were clearly erroneous because they omitted consideration of evidence directly relevant to the issues the Court was required to decide. The Court failed to account for the totality of the evidence presented at trial and instead relied on limited evidence—mostly Plaintiff's self-serving statements—to support its conclusion that the City should be held vicariously liable for the conduct of its former employee, Defendant Sonny Aguilera. This was error.

The Court's conclusions were simply not a "permissible view [ ] of the evidence" because it made factual findings by "treating items of evidence in isolation" and failed to address evidence related to Plaintiff's credibility despite an "extensive record and numerous factual disputes." *Al-Adahi v. Obama*, 613 F.3d 1102, 1111 (D.C. Cir. 2010). Contrary to Plaintiff's arguments in opposition, the City's motion is proper and should be granted.

II.   **ARGUMENT**

A.   **The Court's Factual Findings Regarding Vicarious Liability Were Clearly Erroneous**

As Plaintiff concedes, the Court's vicarious liability finding was primarily based on the following facts:

- Aguilera obtained Plaintiff's personal information during the service call;
- Aguilera's phone and text communications with Plaintiff occurred while he was on duty;
- Plaintiff testified she felt forced to comply with Aguilera's sexual demands on September 2, 2022 and October 19, 2022 due to his position as an officer;
- During each incident, Aguilera either had a visible firearm, flashed his badge, or self-identified as an officer.

- 5 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- Aguilera initially discussed the investigation with Plaintiff while they were in his vehicle.

Dkt. 137, p. 12; Dkt. 117, p. 17.

However, the City has identified extensive *undisputed* evidence related to the above findings that dictate a different result and which the Court failed to consider in its Findings.  See City's Memorandum of Points and Authorities in Support of Motion to Amend Findings of Fact and Conclusions of Law ("MPA") [Dkt. 132]) Section III-A.  Rather than reviewing the totality of the circumstances and evidence, the Court cherry-picked facts and evidence to support its conclusion that Aguilera acted within the course and scope of his job.  The court ignored that after the service call, Aguilera and Plaintiff communicated on their personal cell phones, he asked her to come to his house, each time he texted her he made clear he wanted to see her *after work* for personal reasons*,* and the two sexual encounters occurred when he was indisputably off duty, in plainclothes, driving his personal vehicle. In finding that Plaintiff "felt" forced to comply with Aguilera's requests, the court omitted the facts that she never refused so he never used force, and Plaintiff testified she was always "agreeable" and cooperative and thus never gave the impression she rebuffed him, as Plaintiff claims.

The Court found that on September 2, Aguilera's duty weapon was visible in his car door but ignored evidence that refuted this allegations as well as Plaintiff's testimony that at no point did he refer to his gun or otherwise use it in any way. The Court ignored evidence disputing the allegation that Aguilera flashed his badge on October 19. And even assuming Aguilera "flashed his badge", he did so towards the property manager after Plaintiff requested that the manager let them in to the apartment building because they were "there to pick-up a friend."  The Court *omitted* these facts which refute the Court's finding that Aguilera acted within the course and scope of his job.

Because the court omitted material evidence, its application of the law to the facts was clearly erroneous.  As *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12

- 6 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION
TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Cal. 4th. 291, 298 (1995) held, the fact that the tortfeasor and victim were brought together by the tortfeasor's employment is not enough for vicarious liability. *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 206 (1991) has been confined to its facts. *Mary M.* does not dictate extending its holding to the situation presented here, and the Court committed clear error in extending its holding to the facts of this case.

As discussed in more detail below, the Court committed error in concluding that policy factors supported a finding of vicarious liability. The Court refused to consider evidence that as soon as it received a documented complaint from Plaintiff, the Police Department conducted a prompt, thorough investigation. Instead, the Court admonished defense counsel for making such arguments. Investigators acted swiftly to investigate her complaint, leading to Aguilera's resignation. Even after he resigned, investigators completed their investigation, sustained their findings and reported Aguilera to POST, resulting in his decertification. The Court erroneously relied on only part of Aguilera's statements to investigators that he violated policy while excluding the rest of his statement which made clear he did not in fact admit to violating the policy against "unwelcome solicitation".

The Court's findings related to Plaintiff's underlying claims also were erroneous. For example, with respect to the Bane Act claim, the Court committed clear error in finding that Aguilera was a state actor for Fourth Amendment purposes when he deleted data from Plaintiff's phone while off duty to *hide* his conduct rather than to investigate any crime. This finding was illogical, implausible and without support in inferences that can be drawn from the record. All the Fourth Amendment case law cited by the Court involved situations where officers were clearly conducting police business, not pursuing personal self-gratification through sexual favors. For all the reasons stated in detail in the City's opening brief, the Court should grant the City's Rule 52(b) motion.

/ / /

/ / /

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 7 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

## B.    The Court Made Manifest Errors of Fact By Omitting Facts and Failing To Consider the Totality of the Evidence

Plaintiff argues that the City "seeks impermissible relitigation of credibility and factual findings already resolved at trial." (Dkt. 137, p. 13.)  This is incorrect.  Rather, the City has pointed out with specificity extensive evidence and facts that the Court overlooked or misapprehended. The Court's findings were erroneous because they omitted key facts that if included, paint a very different picture than that described by the Court. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573 (1985) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) [finding trial court's findings of fact clearly erroneous where testimony was in clear conflict with contemporaneous documents].)

The City is not asking the Court to reconsider what it has already thought through or to reweigh evidence.  Rather, the City is arguing that (1) the Court wholly ignored certain facts and thus made erroneous overall factual findings that misrepresent the totality of the evidence presented at trial—even recognizing that its findings are to be given deference; (2) the Court incorrectly applied legal standards to the facts, and therefore (3) the Court's factual findings and legal conclusions were illogical, implausible and without support in inferences that can be drawn from the record. See *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009); *Latif v. Obama*, 666 F.3d 746, 765 (D.C. Cir. 2011) (concurring opinion).  The Court's failure to even acknowledge evidence that conflicted with Plaintiff's claims supports a finding of clear error.  *See Al-Adahi*, 613 F.3d at 1110 ("We do not say that any of these particular pieces of evidence are conclusive, but we do say that they add to the weight of the government's case against Al–Adahi and that the district court clearly erred in tossing them aside.")

///

- 8 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

**C.   The Trial Court's Credibility Determinations Were Clearly Erroneous**

Plaintiff defends the Court's credibility determinations.  (Dkt. 137, p. 15.) However, the Court's conclusion that Plaintiff was credible and that City witnesses were not, was clear error given the totality of the evidence presented at trial and the inferences to be drawn from that evidence.

1.   The Court's finding that Plaintiff was credible was erroneous

The Court's findings regarding Plaintiff's credibility were very limited.  It found that Plaintiff had "a credible fear in both situations [September 2 and October 19 incidents] that, from Officer Aguilera's known 'position of authority,' there was an 'implied threat of hardship or retribution if [Plaintiff] refused to cooperate.'" Dkt. 117, p. 11.  Further, the Court found "Plaintiff's testimony, including her testimony as to the events and her resulting damages, reasonable and credible."  (*Id*. p. 7.) However, the Court only cites evidence presented by Plaintiff—primarily excerpts of Plaintiff's self-serving trial testimony—to reach this determination, while ignoring other contradictory evidence, including Plaintiff's inconsistent statements both on cross-examination, prior statements to police investigators, and testimony from police investigators and the City's expert.

Portions of Plaintiff's testimony relied on by the Court told only one side of the story. "A plausible explanation does not necessarily compel credence." *Latif v. Obama*, 666 F.3d at 757 (concurring opinion).  The Court completely ignored evidence that called into question the truthfulness of Plaintiff's statements.

Plaintiff characterizes the City's evidence of Plaintiff's prior inconsistent statements as merely "unsworn interview statements." (Dkt. 137, p. 16.) However, the law is clear that prior inconsistent statements of a party serve to undermine, rather than bolster, their credibility. "A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness." *Kalouma v. Gonzales*, 512 F.3d 1073, 1077 (9th Cir. 2008) (citing *United States v. Hale*, 422

- 9 -

U.S. 171, 176, 95 S.Ct. 2133 (1975); *Grunewald v. United States*, 353 U.S. 391, 418–19 (1957) ("It is, of course, an elementary rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant or an ordinary witness."); see also *Carson Harbor Village, Ltd. v. Unocal Corp.* (9th Cir. 2001) 270 F3d 863, 873 (en banc)(" prior inconsistent statements may be used to impeach the credibility of a witness"); *United States v. Gilbert*, 57 F.3d 709, 712 (9th Cir. 1995) (Trial court properly allowed government to introduce prior unsworn inconsistent statements by witnesses to impeach where testimony of witnesses was key to government's case.)

The Court's finding that Plaintiff was credible, without any analysis, is a manifest error of fact in that the inferences to be drawn from the evidence were the opposite. "Manifest error" is error that is "plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Hernandez v. Montgomery* (C.D. Cal. 2024) 2024 U.S. Dist. LEXIS 145077, at *5 (quoting Black's Law Dictionary (11th ed. 2019))

Where Plaintiff's later testimony conflicts with earlier contemporaneous statements that were recorded as part of an official internal affairs investigation, the Court should give the contemporaneous statements more weight. See *U.S. v. Gypsum Co.*, *supra,* 333 U.S. at 395-396.

2. <u>The Court's "concerns" about the credibility of City witnesses were erroneous</u>

The Court made the following statement regarding the credibility of the City's key fact witnesses:

> The Court also notes the testimony from Detective Fuentes and Sergeant Block, both high-ranking officers employed by defendant City who apparently still believe the interaction between Plaintiff and Officer Aguilera was lawful and consensual. See, e.g., Dkt. 109 at 73:17-20 (Sergeant Block: "[Officer Aguilera] said that the relationship flourished – he didn't use the word 'flourished,' that's my word."). To maintain these positions when even Officer Aguilera admitted he violated the policy against the "[u]nwelcome solicitation of a personal or sexual relationship while on duty or through the use of one's official capacity" *raises serious concerns regarding their credibility*.

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

(Dkt. 117, p. 17 (emphasis added).) There are numerous errors in these findings. First, the Court ignores Plaintiff's statements to investigators, admitted into evidence, that supported Sgt. Block and Detective Fuentes' opinion that the relationship was consensual, including (1) her statement to them that on September 3, 2022, after the sexual encounter, Plaintiff texted Aguilera to confirm he got home safely (D-Ex. 25A, excerpt 4; D-Ex. 1, p. 1), (2) her statement to investigators that she texted with Aguilera on September 30, 2022, because she wanted to go with him (D-Ex. 25A, excerpt 5, @minute 2:15), (3) the fact that she gave Aguilera her location on two occasions so that they could meet, (4) text messages where she asked Aguilera for advice (D-Ex. 1, pp. 2-3); (5) statements to investigators that Aguilera never threatened her with any harm or violence. ((Tr. 403:5-21; 414:12-14; 220:20-22; 378:2-4.)

Moreover, as noted in the City's opening brief, the Court's reliance on Aguilera's so-called admission that he violated the policy on unwelcome solicitation is clear error, as the Court only admitted a portion of Aguilera's purported admission. Aguilera made clear in his entire statement that he in fact did *not* admit that the solicitation was unwelcome. Counsel for the City noted that Aguilera's entire statement should be admitted (Tr. 121:3-6) but the Court declined to do so. Plaintiff continually refers to this so-called admission in her Opposition to argue that the Court's ruling was sound. (See Dkt. 137, p. 11:17-21, p. 19:10-14.) Aguilera's full statement to Investigators, in which he denied that he violated the "unwelcome solicitation" portion of the policy can be found at Aguilera Interview Part 2, pp. 6:12-7:25 (lodged with Court; attached to Declaration of Ruth M. Bond in Support of Replies to Opposition to Motion for New Trial and Motion to Amend, for the Court's convenience). The Court erred in not considering Aguilera's full statement.

Moreover, at no point did Plaintiff impeach the City's key witnesses. The police investigators credibly testified that they found no evidence that any of Aguilera's misconduct occurred while he was on duty or that he asserted his authority

- 11 -

as an officer by using force or otherwise.  (Tr. 160:4-10; 317:10-15.).  By contrast, the City presented, without objection, numerous prior statements from Plaintiff's investigation interview that completely contradicted her trial testimony. (Defendant's Exhibits 25A and 25B; see also Dkt. 114, pp. 22-23 [detailing Plaintiff's contradictory statements)).  The investigators had no incentive to lie as they have no pecuniary interest in the litigation.  By contrast, Plaintiff asked the Court to award her $12 million (Dkt. 118), demonstrating her motive at trial in repudiating prior statements that did not help her case.

3.    The Court's findings that Dr. Nolan was credible, and Dr. Sayer was not, were clearly erroneous.

Plaintiff argues that "the record amply supports" the Court's determination that Dr. Nolan was more credible than Dr. Sayer.  (Dkt. at p. 16.) However, the evidence demonstrated that Plaintiff's abusive boyfriend, Kirby Larsen, caused Plaintiff's emotional distress during the relevant time period. Plaintiff admitted that she was traumatized by the domestic violence incident between her and Larsen which prompted the call for service on August 25, 2022. (Tr. 182:7-15, 184:18-22, 188:9-10, 398:4-8 398:17-22.) At the time of the call for service, Plaintiff had an order against Larsen for no negative contact which a Court issued for past violence between them. (Tr. 396:4-16, 397:5-11.)

Sometime between October 7-19, 2022, Larsen broke Plaintiff's phone by smashing it at her feet during an argument. (Tr.426:5-427:5) Larsen also punched Plaintiff in the face around the time that he smashed her phone. (Tr. 435:5-9.) Plaintiff testified that when Larsen was not around, she did not have to "hide from the world." (Tr. 429:11-12; 432:9-13.) She did not have to block numbers from her phone because she did not have to worry about conflict with Larsen. (Tr. 433:2-14.) On some days it would be okay for her to talk to certain people and other days it was not okay based upon Larsen's mood. (Tr. 433:16-25.) Larsen would yell and scream in violation of the no negative contact order. (Tr. 434:8-17.) When Larsen violated the order, she

- 12 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

would seek to have him jailed. (Tr. 434:18-25.) In contrast, Aguilera did not subject Plaintiff to any of the same behavior Plaintiff testified that she experienced with Larsen. (Tr. 439:4-6.) The Court does not even acknowledge this evidence.

Dr. Nolan diagnosed Plaintiff with PTSD resulting from a traumatic event. (Tr. 273:23-274:3.) Dr. Nolan admitted that PTSD could be precipitated by domestic violence. (Tr. 295:15-17.) However, she concluded without explanation that the domestic violence did not ultimately contribute to the PTSD diagnosis. (Tr. 297:9-11.) Whereas Plaintiff testified that the domestic violence had a significant impact on her life. (Tr. 429:11-12; Tr. 434:8-17.) Additionally, Dr. Nolan further admitted that she relied on Plaintiff's own reporting regarding the subject of her nightmares and, most importantly, that Plaintiff was motivated by this case to claim that her distress was a result of the incidents with Aguilera and had no other cause. (Tr. 301:10-20; 303:20-24.) The Court ignored the clear evidence that Plaintiff's testimony under oath differed from the information she shared with Dr. Nolan.

Dr. Nolan's evaluation occurred in a vacuum, without considering Plaintiff's past or recent history. (Tr. 507:5-11.) In arriving at her diagnosis, Dr. Nolan did not appear to consider the domestic violence, Plaintiff's prior rape, or the police shooting a homeless person next to Plaintiff's car. (Tr. 544:20-545:2.) It strains credibility that these incidents could not have any impact on Plaintiff whatsoever.

The Court wholly discounted Dr. Sayer's testimony as "unreasonable, unreliable, and incredible" without citing to any evidence of actual unreasonableness, unreliability or incredulity and instead took offense that Dr. Sayer concluded that Plaintiff suffered no damages. (Dkt. 117, p. 6 fn. 1.) The Court ignored Dr. Sayer's impressive professional qualifications as a psychiatrist with a majority active outpatient practice. (Tr. 477:7-487:2.) On the other hand, Dr. Nolan is a licensed psychologist with a majority forensic practice and only a small (10%) clinical practice, meaning the bulk of her practice is being a hired expert witness. (Tr. 265:22-23; 293:3-16.) Dr. Sayer concluded that many other factors in Plaintiff's life likely

- 13 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

contributed to her symptoms apart from her interactions with Aguilera. (Tr. 507:12-14.) Further, Dr. Sayer testified that Plaintiff's long history of trauma, including the domestic violence, rape and witnessing the police killing could all have contributed to Plaintiff's emotional distress. (Tr. 516:17-20; 545:3-7.) The Court made no findings regarding any of these other potential sources of emotional distress; thus, the Court did not examine the totality of the evidence in making its findings.

**D.    Evidence Did Not Support The Inferences Drawn By The Court**

Next, Plaintiff argues that the City's motion "rests entirely on the premise that the evidence could support alternative inferences: that the relationship was consensual rather than coerced; that no badge was flashed and no firearm displayed; that the domestic violence investigation had closed; that Plaintiff never attempted to report the assaults in person; and that Plaintiff's damages stem from other trauma rather than Officer Aguilera's conduct." (Opp. at p. 15.)

This is incorrect.  Rather, the City argues that the evidence, viewed in its entirety, did not support the inferences reached by the Court. Plaintiff claims that there was no clear error, relying on precedent that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," citing *Anderson v. City of Bessemer City*, 470 U.S. at 573 (Dkt. 137, at p. 15) and that the district court sitting as fact-finder validly resolved discrepancies in the conflicting accounts offered into evidence. But Plaintiff only focuses on the starting point for clear error review. Granted, the district court has wide latitude to resolve factual disputes—but only within certain bounds. The Court's finding must be "permissible" or "plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 574.

By contrast here, the Court's inferences were not based on the record in its entirety; rather they were based on the view that one side's evidence, standing in isolation, was plausible.  *See Latif v. Obama*, 666 F.3d 746, 765 (D.C. Cir. 2011) (citing *Easley v. Cromartie*, 532 U.S. 234, 247 (2001) (finding clear error even where

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

"record contains a modicum of evidence offering support for the District Court's conclusion"). Where the record contains conflicting evidence, the clear error standard requires an assessment of the comparative weight of the evidence both for and against the Court's finding. "It may be that the evidence relied upon by the district court is insufficiently probative to sustain its finding." *Latif*, 666 F.3d 766 (citing *Easley*, 532 U.S. at 247 [clear error where statistical evidence "too small to carry significant evidentiary weight," testimony did not provide "more than minimal support" and other evidence did not "significantly strengthen" district court's finding].) Or the evidence may be outweighed by other, more persuasive evidence. See, e.g., *Anderson*, 470 U.S. at 575 (credibility finding clearly erroneous if " [d]ocuments or objective evidence ... contradict the witness' story"); *U.S. Gypsum Co., supra*, 333 U.S. at 396 (clear error "[w]here ... testimony is in conflict with contemporaneous documents.").

Plaintiff argues that the Court was correct in finding that on September 2, Aguilera "discussed the pending case," citing an excerpt of testimony from the City's "internal affairs supervisor," Lt. Matthew Block, who initially said that the investigation "probably was" ongoing. (Dkt. 137, p. 17.) Plaintiff neglects to mention that on re-direct, the City showed Lt. Block a document that refreshed his recollection that the investigation had been closed as of August 29, 2022, three days after the incident. (Tr. 353:1-357:25.) Like the Court, Plaintiff has erroneously cited only part of the evidence in the record on a particular issue.

Regarding the Court's finding that Plaintiff's interactions with Aguilera were not consensual, the record includes evidence that Plaintiff voluntarily met Aguilera on at least 3 occasions when she knew he was off-duty and after he had told her to "send pics," which she interpreted as flirtatious: (1) on September 2, 2022, she gave him her location at an apartment complex on Sterling Avenue in Riverside (Tr. 87:20-88:10; 143:2-22; 189:11-190:8; 192:22-194:6; 198:5-6; 383:5-7; 382:13-383:25.); (2) on October 19, 2022, she provided her location near her friend's apartment (Tr. 226:13-229:11); and (3) a few days after the October 19 encounter, she told him to

- 15 -

meet her at Reid Park late at night (Tr. 451:17-20; 235:21-236:10.)  She admitted he never threatened her with any harm if she did not comply with his requests.

To support its finding that Aguilera coerced Plaintiff using his police officer status, the Court erroneously states, "on September 2, 2022, Officer Aguilera approached Plaintiff with the pretense that he would discuss Mr. Larson's [sic] ongoing investigation. *This was one day after the reported incident*, and Plaintiff only knew Officer Aguilera as an officer." Dkt. 117, p. 11 (emphasis added). This is simply incorrect as all the evidence established that the "reported incident"—Plaintiff's call for service during a fight with her boyfriend—occurred on August 25, 2022, *eight days* earlier.  (See, e.g., Tr. 39:10-14; 54:4-6; 168:9-13.) And Plaintiff testified that between August 25 and September 2, she and Aguilera exchanged several text messages in which they did not discuss police matters and he asked her to "send pics". (Tr. 185:21-186:13.)

There was evidence admitted at trial that on September 3, 2022, after the first sexual encounter, Plaintiff was worried about Aguilera getting home safely and she texted him because she was concerned for his safety.  (D-Ex. 25A, excerpt 4; D-Ex. 1, p.1.) The evidence showed that on one occasion, on September 30, she responded to Aguilera's texts because she wanted to meet him (D-Ex. 25A, excerpt 5, @minute 2:15.).  Plaintiff did not refute these statements to investigators.

Plaintiff also testified that she did not refuse Aguilera's advances and always tried to be agreeable, supporting investigators' determination that the relationship was consensual.   (Tr. 377:4-17; 389:2-22; 391:19-23; 432:2-3.) The Court ignored evidence that on October 19, after not hearing from Aguilera for two weeks, Plaintiff re-initiated contact with him.  Plaintiff's text messages and phone log with Aguilera showed that on October 19, at 10:59 a.m. Plaintiff texted Aguilera "Hi." (D-Ex. 1, p. 5.) In response, at 11:02 a.m., Aguilera called Plaintiff. (D-Ex. 1, p. 7.) From 10:59 a.m. to 12:15 p.m., Plaintiff and Aguilera exchanged several brief texts. At 11:13 a.m. Aguilera asks Plaintiff, "You in Riverside?" (D-Ex. 1, p. 5.) Plaintiff responded: "He

- 16 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

is in jail in Riverside and I am free to do whatever I want again. Yes in Riverside," "[H]e is in jail" referred to Larsen who was back in jail for violating the no negative contact order. (*Id*.; Tr. 424:23-425:24; see also D-Ex. 25A, @ minute 6:00.) At 11:13 a.m., Aguilera texted her he is "off class at 3:30" and asked, "Want to hangout?" (D-Ex. 1, p. 5.) Plaintiff responded, "That sounds good." (*Id*.)

The evidence also showed Plaintiff lied about important information relevant to her claims, either in her investigation interview or on the stand during trial, including whether she saw a gun in Aguilera's car or a badge during their second encounter.  She told investigators no less than three times that she never saw a gun or a badge on either September 2, or October 19. (Tr. 129:19-22; 392:17-21; 316:10-318:3; Tr. 392:17-393:9; D-Ex. 25, excerpt 1; D-Ex. 25B, excerpt 2).  But at trial she testified that she saw the butt of Aguilera's duty weapon in his car door on September 2. (Tr. 199:7-16.) At trial on direct examination, she claims Aguilera flashed his badge at the property manager on October 19. (Tr. 229:23-230:3.) But on cross examination Plaintiff admitted that she told investigators that Aguilera only told the property manager, "we're just here to pick up a friend."  (Tr. 443:6-9.)  Plaintiff's claim that she did not tell investigators these key details because she was afraid is implausible given her extensive conversations with investigators and their relevance to her allegations.

Setting aside the fact that Plaintiff offered no evidence to corroborate her claim that she tried to report Aguilera by going to the police station, Plaintiff's alleged attempts to report Aguilera are not pertinent to whether Aguilera acted in the course and scope of his job.  Yet the Court relied on this alleged fact to find the City vicariously liable.  The Court should have focused on Aguilera's actions as relevant to the course and scope inquiry and the evidence was insufficient to support the finding that he asserted his authority as a police officer during the two challenged sexual encounters.

/ / /

- 17 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Moreover, the evidence shows that Plaintiff's main allegation in her citizen's complaint was about another officer who she claims used excessive force towards her during an earlier arrest, negating her claim that the main purpose of her complaint was Aguilera's conduct.  (P-Ex. 7.)  Plaintiff did not hesitate to accuse an officer of excessive force; it does not follow that she would be afraid to advise investigators that Aguilera had a gun and flashed his badge during their encounters. Thus, the Court's finding that Plaintiff was afraid to share this information with police is implausible and inconsistent with the record evidence.

Further, the Court ignored the fact that police investigators promptly investigated Plaintiff's complaint leading to Aguilera's resignation, sustained Plaintiff's complaint and reported Aguilera to POST, resulting in his decertification. (Tr. 332:2- 17.) Thus, the Court's reliance on limited alleged facts—not the totality of the evidence—to find the City vicariously liable was illogical, implausible and without support in inferences that can be drawn from the record. See *United States v. Hinkson*, *supra,* 585 F.3d at 1262; *Latif v. Obama*, 666 F.3d 746, 765.

The Court's Findings of Fact do not make clear at all that it considered competing evidence, weighed that evidence and then construed it in Plaintiff's favor. Rather the Court's findings appear to simply adopt the Plaintiff's account of events while inexplicably ignoring evidence that contradicted it.

### E. The Court's Conclusions of Law Were Erroneous

#### 1. The Court's findings that Aguilera's conduct was an outgrowth of employment was clearly erroneous given controlling case law

Plaintiff argues that the Court was correct in concluding that Aguilera's "off-duty misconduct … may fairly be regarded as an outgrowth of his employment," and that "[e]very subsidiary finding is supported by the trial record."  (Dkt. 137, at p. 19.) Plaintiff and the Court erroneously advance the argument that "Aguilera was only able to contact Plaintiff because she provided her personal information during the official call for service—information she would not otherwise have shared."  (*Id*.)

- 18 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

But the focus of this argument is all wrong. Police officers meet members of the public in the course of their official duties all the time. That does not mean that if they later engage in misconduct toward any member of the public they have previously met on duty that they were acting within the course and scope of their jobs. See *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th. 291, 298 (1995) ("That the employment brought tortfeasor and victim together in time and place is not enough.").

Under the "risk-focused test" the Court applied in finding vicarious liability, "an employee's allegedly tortious conduct is deemed to be within the scope of employment only if that conduct is required by, engendered by, or an '"outgrowth"' of his employment." *Musgrove v. Silver,* 82 Cal.App.5th 694, 708 (2022), citing *Lisa M., supra,* 12 Cal.4th 291, 298, 300 (1995); *Farmers Ins. Group v. County of Santa Clara,* 11 Cal.4th 992, 1005 (1995). "Put differently, there must be 'a nexus between the employee's tort and the employment.'" *Id.*, quoting *Marez v. Lyft, Inc.,* 48 Cal.App.5th 569, 582 (2020).

In *Musgrove,* a personal chef employed by the defendant film producer met the producer's executive assistant off duty for a late-night social gathering during which the chef supplied alcohol and cocaine. The executive assistant later drowned. The Court held that the chef's conduct was not within the scope of his employment.

The *Musgrove* court reasoned "the fact that Herold [the chef] met Musgrove [the executive assistant] on prior trips where they were brought together because Herold happened to be Silver's personal chef and Musgrove happened to be Silver's executive assistant does not mean that Herold's conduct in the course of their personal relationship is an outgrowth of Herold's employment as a chef." *Musgrove,* 82 Cal.App.5th at 713.

2.    Mary M. is not applicable here.

Next Plaintiff's argue that *Mary M. v. City of Los Angeles* is controlling. However, as the City explained in its proposed Findings of Fact and Conclusions of

- 19 -

57341921.2/005119.00021

Law (Dkt. 132) and its Motion for New Trial (Dkt. 134) the Court should not extend *Mary M.* to the facts here, as it involved an on-duty officer in uniform, in his patrol car who assaulted a woman after he pulled her over for a traffic stop. Later cases have called into question the holding in *Mary M.* (See, e.g., *M.P. v. City of Sacramento*, 177 Cal.App.4th 121, 124 (2009); see also *Z.V. v. Cnty. of Riverside*, 238 Cal.App.4th 889, 891 (2015).)

Plaintiff's Opposition confirms the manifest error of law and fact in the Court's order by taking the same approach: listing selected evidence, the firearm, the badge, the 'official business' announcement, the feigned discussion of the investigation, and the on-duty communications—and relying on *Mary M. and Juarez v. San Bernardino City Unified School District* (2024) 106 Cal.App.5th 1213. What Plaintiff and the Court fail to address, however, is that, unlike in *Mary M. and Juarez*, there is no evidence that Aguilera pointed a gun at Plaintiff, displayed his badge to her, threatened her, told her he wanted to see her for "official business," or claimed he needed to discuss an investigation. As for the on-duty communications, there is no allegation that Aguilera committed any tortious conduct by texting or calling Plaintiff. Moreover, each time he texted her from work it was to tell her when he would be off work. (see, e.g. D-Ex. 1, pp. 1, 2, 5; Tr. 143:2-22;183:25-184:4; 382:13-383:7.)

### 3.    The policy rationales do not dictate vicarious liability here.

In *Musgrove, supra*, the appellate court noted that as a matter of policy, holding an employer liable for an employee's conduct "would undoubtedly make strides toward 'prevent[ing]the recurrence of [similar] tortious conduct' and 'giv[ing] greater assurance of compensation [to] the victim' [citations]," however "these two factors will always counsel in favor of imposing liability because they will be furthered whenever a defendant is held vicariously liable for a plaintiff's injury." *Musgrove*, 82 Cal.App.5th at 715 (emphasis in original; citations omitted). The court further noted that "[w]hether 'it is equitable to shift losses to the employer' turns on whether 'the employer benefit[ted] from the injury-producing activity and [whether] such losses

- 20 -

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

are, as a practical matter, sure to occur from the conduct of the enterprise.' [Citation.] Where the employee's 'injury-producing activity' is 'simply too attenuated' from his duties for the 'enterprise,' there is no vicarious liability as a matter of law. [Citation.]" Id. The Musgrove court found that it was inequitable to shift the burden of loss onto the employer because it did not benefit from its employee's (chef's) "'injury-producing activity' of supplying Musgrove with more alcohol and with cocaine late at night before she was likely to go swimming, and because this is not, 'as a practical matter, sure to occur from' Herold's employment as Silver's personal family chef. In sum, Herold's malfeasance and nonfeasance is 'simply too attenuated' from his job duties as a chef to make it equitable to tag Silver with liability arising out of Herold's tortious conduct." Id. at 715.

Here, Plaintiff argues that the "Court found all three respondeat superior policies – deterrence, victim compensation, and equitable loss-spreading – favored liability." Dkt. 136, p. 17. However, the Court did not address each of those policy factors. Dkt. 117, p. 17. Instead, it merely quoted language from *Mary M.* explaining why imposing vicarious liability may be appropriate.

Moreover, although Plaintiff argues that the Court's "policy-factor findings rest on credibility determinations that are entitled to deference," the order does not reflect the Court considered the City's evidence, much less properly weighed the credibility of the City's witnesses. Rather, without addressing those portions of Plaintiff's testimony that undermined her claims, the Court concluded the City's witnesses were not credible because they opined that the interaction between Aguilera and Plaintiff was lawful and consensual. Based on that finding, and on disputed evidence that Plaintiff attempted to report Aguilera's conduct on two prior occasions but was ignored by a sergeant, the Court found that the cost resulting from the misuse of police power should be borne by the community. Dkt. 117, p. 17. The Court's view and application of the law, based on isolated evidence, is clear error.

///

- 21 -

57341921.2/005119.00021

Significantly, the Court admonished the City's counsel from arguing that the City promptly investigated Plaintiff's written complaint and followed procedures the City had in place which resulted in Aguilera being decertified as a police officer. (The Court's consideration of evidence it admonished the City from disputing is clear error.

The Court also clearly erred by relying on Aguilera's out-of-context "admission," which Plaintiff repeatedly cites to support both the conclusion that Aguilera acted within the scope of employment and the Court's credibility assessment of the City's witnesses. That argument is misleading because the full context of Aguilera's statement shows that he did not admit his actions were "unwelcomed." Plaintiff's own record citation shows that Aguilera admitted only that he was a police officer. The Court's piecemeal reliance on one portion of Aguilera's "admission," taken out of context, is clear error. See Fed. R. Evid. 106 (rule of completeness); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172-173 (1988) ("when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible under Rules 401 and 402").

**F.     The Court's Findings On The Underlying Claims Is Manifest Error**

As stated in its Memoranda of Points and Authorities in Support of Motion for New Trial and Reply to Plaintiff's Opposition to Motion for New Trial (Section III), which the City hereby incorporates by reference, the Court's findings on the underlying claims constitute manifest error.  As explained in detail above, the Court did not examine the totality of the evidence and as a result its conclusions of law are erroneous.

///

///

///

///

- 22 -

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION
TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## III.   <u>CONCLUSION</u>

For the foregoing reasons, and all the reasons stated in its opening MPA and Motion for New Trial, the Court should grant the City's Motion to Amend Findings of Fact and Conclusions of Law and amend the Judgment accordingly.

Dated: June 18, 2026          ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: */s/ RUTH M. BOND*
    IRMA RODRIGUEZ MOISA
    RUTH M. BOND
    JENNIFER K. BERNEKING
    Attorneys for Defendant
    CITY OF SAN BERNARDINO

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 23 -
DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

**CERTIFICATE OF WORD COUNT**

Counsel of Record hereby certifies that pursuant to Local Rule 11-6.2 (Certificate of Compliance) of the Local Rules – Central District of California, the text of this brief consists of 6,110 words out of 7,000 words, "including headings, footnotes and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits" as counted by Microsoft Word word-processing program used to generate this brief.

Dated: June 18, 2026            ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: */s/ RUTH M. BOND*
    IRMA RODRIGUEZ MOISA
    RUTH M. BOND
    JENNIFER K. BERNEKING
    Attorneys for Defendant
    CITY OF SAN BERNARDINO

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 24 -
DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021

**CERTIFICATE OF SERVICE**

Case Name: *Christina N. v. San Bernardino et al*

No.: 5:24-cv-01593-KK-AGR

On June 18, 2026, I filed the following document(s) described as **DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW** electronically through the CM/ECF system. All parties on the Notice of Electronic Filing to receive electronic notice have been served through the CM/ECF system.

Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Robert R. Clayton<br>Christina R. Kerner<br>Kym Kanenaka<br>Brock & Gonzales, LLP<br>6701 Center Drive West, Suite 610<br>Los Angeles, CA 90045<br>Brock & Gonzales, LLP<br>6701 Center Drive West, Suite 610<br>Los Angeles, CA 90045 | **VIA CM/ECF and EMAIL**<br><br>**Attorneys for Plaintiff CHRISTINA N.**<br><br>Tel.: (310) 294-9595<br>Fax: (310) 961-3673<br><br>Robert R. Clayton, Esq. (rc@brockgonzales.com)<br>Christina R. Kerner, Esq. (ck@brockgonzales.com)<br>Kym Kanenaka (kk@brockgonzales.com)<br>Rose Faulk (rf@brockgonzales.com) (paralegal) |
| Louanne Masry Weeks<br>**Masry Law Firm APC**<br>2629 Towngate Road Suite 205<br>Westlake Village, CA 91361 | **Via EMAIL**<br>**Attorneys for Plaintiff CHRISTINA N.**<br><br>Tel.: (805) 719-3550<br>Fax: (805) 919-5259<br><br>Email: masry@masrylaw.com |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 18, 2026, at Pasadena, California.

*/s/ Ashlie Kennedy*
Ashlie Kennedy

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

DEFENDANT CITY OF SAN BERNARDINO'S REPLY IN SUPPORT OF MOTION TO AMEND COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

57341921.2/005119.00021